UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.: 23-cr-10308-FDS |
| ) | |
| CONOR LAHIFF, ) | |
| ) | |
| Defendant ) | |
| ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

For the reasons set forth herein and to be discussed at the sentencing, the government respectfully recommends that the Court sentence the defendant, Conor LaHiff ("LaHiff") to a term of imprisonment of three months, followed by three years of supervised release with the first 12 months to be served in home confinement. The government further requests that the Court impose a mandatory special assessment of $100, restitution of $34,110, and forfeiture in the same amount.

**I.    FACTUAL BACKGROUND**

On June 13, 2023, the defendant was fired from Whittier Regional Vocational Technical High School, where he was employed as a desktop and network manager. *See* PSR at ¶9. The same day, LaHiff used his administrator account to delete over 1,200 Apple IDs from the Apple School Manager account (software that the school used to manage student, faculty, and staff resources). *Id*. at ¶10. He then deactivated 1,400 Apple accounts and attempted to disconnect additional Apple resources. *Id.* at ¶11. Finally, he deactivated administrative accounts in a system the school used to manage anti-virus protection and disabled the school's phone system for approximately 18 hours. *Id.* at ¶¶12-13.

On December 13, 2023, the defendant pled guilty to an Information charging him with a violation of 18 U.S.C. §1030(a)(5)(A),(c)(4)(A)(i),(c)(4)(B)(i) (Damage Without Authorization to Protected Computers). As set forth below, LaHiff breached his plea agreement while awaiting his

1

sentencing. The plea agreement is now void, and the government's sentencing recommendation has changed.

## II. LAHIFF'S CONDUCT PENDING SENTENCING

The plea agreement outlined the government's original recommendation of 24 months of probation, the first 12 months to be served in home confinement. Dkt 3. Since pleading guilty, LaHiff inexplicably impersonated an FBI Agent on LinkedIn, using what appeared to be an AI generated image and his own name to make an innocuous comment on a photograph of Assistant U.S. Attorneys. PSR at ¶5. When confronted, he admitted to his conduct and explained to Probation that he did this to "push" the federal case down in Google search results. *Id.*

His impersonation of a federal agent on a professional networking platform was strange at best. But what is more troubling is that LaHiff lied about his level of education—to the Court at his Rule 11 and to probation in his PSR interview.[1] Not only did he lie, he then gave probation a falsified transcript from Albertus Magnus College, which appears to be authentic. PSR, at ¶50. The government discovered the truth about LaHiff's purported degree (which appeared on his resume) in connection with its underlying investigation, as it attempted to determine whether he engaged in nefarious cyber-related conduct before he was employed at Whittier Tech. Whether or not LaHiff has an advanced degree is inconsequential to the instant offense. His decision to lie about it is baffling. It demonstrates disrespect for the judicial system and a lack of appreciation for the severity of the situation he finds himself in. That is why the government's recommendation has changed to include a period of incarceration.

---

[1] The government has not received a transcript from the Rule 11 hearing and makes this assertion based on the AUSA and agent's memory of the hearing.

### III. SENTENCING GUIDELINES CALCULATION

As explained below, the defendant's total offense level is 10. *See* PSR at ¶¶19-28. At Criminal History Category I, this offense level results in an advisory Guidelines range of 6-12 months of imprisonment. The parties and probation calculate LaHiff's Guidelines as follows:

| | |
|---|---:|
| Base Offense Level, § 2B1.1(a)(1) | 6 |
| Loss greater than $15,000 but less than $40,000, § 2B1.1(b)(1)(C) | +4 |
| Defendant convicted of an offense under §1030 (a)(5)(A), § 2B1.1(b)(19)(A)(ii) | +4 |
| Acceptance of responsibility | -2 |
| Defendant meets criteria in §4C1.1 | -2 |
| **Total Offense Level** | **10** |

### IV. CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The sentencing factors set forth in 18 U.S.C. § 3553(a) support the incarcerative sentence the government is requesting.

**A. Nature and Circumstances of the Charged Offense**

LaHiff was upset that he was fired by Whittier Tech. PSR at ¶10. But he took what should have remained an employment dispute and escalated it into retaliatory criminal conduct. LaHiff had enough training and IT experience to effectuate his crime. *Id.* at ¶¶10-14. He also knew the havoc he would cause by his actions. *Id.* at ¶¶10-14.

LaHiff's actions cost the school both money and time. As set forth in their victim impact statement, the school states it has lost over $350,000 in staff time, $25,000 for remediation

services, and $100,000 in infrastructure rebuilding and security remediation services.[2] PSR at ¶15. Even if LaHiff truly believed he had reason to be frustrated with his employer, there is simply no excuse for seeking revenge through a cyber-attack. He nonetheless demonstrated prompt acceptance of responsibility for his conduct. When confronted by agents, LaHiff immediately indicated he wanted to plead, and he then promptly did so.

### B. History and Characteristics of the Defendant

The government's below Guidelines recommendation recognizes that the defendant quickly accepted responsibility for his conduct prior to being charged, and further gives weight to the fact that he has reportedly faced difficult personal circumstances in his childhood and struggles with mental health, as detailed in the PSR. PSR ¶¶37-40, 46-47. But custody as a specific deterrent should still be a part of the Court's sentence. How will LaHiff respond if he is laid off or fired again? What will happen if a promised promotion doesn't come through, or if he has a disagreement with a manager? The reality is that life will inevitably upset or disappoint LaHiff in some form. The government intends the custodial portion of LaHiff's sentence to serve as a reminder that weaponizing computers is not a solution for workplace or personal issues.

### C. Need to Avoid Unwanted Sentencing Disparities

The government recognizes the need to avoid sentencing disparities. The recommended sentence is in line with other sentences imposed in this district for similar offenses. *See United*

---

[2] As noted above, the government seeks $34,110 in restitution and forfeiture and has utilized the same number for loss purposes. Loss is defined under §1030(e)(11) as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment and restoring the data, program, system or information to its condition prior to any offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." The government's request for restitution does not include lost staff time in responding to the incident. It includes the amount Whittier Tech spent on remediation services, as well as other costs covered under this definition.

*States v. Colby Anderson*, 19-cr-10041-WGY, Dkt 54 (network operations technician attacked network of former employer upon termination, victim incurred over $46,000 in damages, the Court imposed a sentence of four months in custody and four months of home confinement, followed by 12 months of supervised release); *United States v. Kamlesh Patel*, 15-cr-10168-LTS, Dkt 59 (network engineer attacked network of former employer upon termination, victims incurred $137,896 in damages, the Court imposed a sentence of 24 days incarceration, one year of home detention and five years of probation).

      **D.**      **Need for the Sentence Imposed to Afford Adequate General Deterrence**

There is also a strong need to deter employees from engaging in similar conduct. Like LaHiff in this case, employees working in the information technology space have increasingly important roles in the institutions they serve. They are trusted with unfettered access to corporate, private and/or governmental computer networks. Those employees are uniquely trained to understand how their employers' digital infrastructure works and are often the *only* employees who can solve network problems for their colleagues and clients. These same characteristics, however, make them uniquely suited to cause significant and expensive problems—as LaHiff did in this case. LaHiff will not be the last IT professional to be let go from his job. Nor will he be the last to retaliate against colleagues on his way out the door.

More broadly speaking, criminal conduct perpetuated by virtue of an employee's position is a common crime. It occurs with a disquieting ease and through different methodologies, both sophisticated and unsophisticated. While it is not always easily detected—here, palpable disruption was the purpose of the attack. A custodial sentence is necessary to deter these well-trained and highly trusted employees from picking digital fights with their employers, especially where the employers trained and trusted the same employees to protect them from destructive attacks.

V.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of three months incarceration, three years of supervised release (with the first 12 months to be served in home confinement), a special assessment fee of $100, restitution in the amount of $34,110 and forfeiture in the same amount. The requested sentence is sufficient but not greater than necessary pursuant to factors set forth in §3553(a).

    Respectfully submitted,

    JOSHUA S. LEVY
    United States Attorney

By: */s/ Mackenzie A. Queenin*
    MACKENZIE A. QUEENIN
    Assistant United States Attorney

Date: March 28, 2024

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

    */s/ Mackenzie A. Queenin*
    MACKENZIE A. QUEENIN
    Assistant United States Attorney